UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| STEVEN SHANK | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 1:19-CV-306 JD |
| | ) |
| ANDREW M. SAUL, Commissioner of | ) |
| Social Security, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Steven Shank applied for social security disability insurance benefits, alleging that he has been unable to work since August 25, 2007. After a hearing where Mr. Shank testified, the ALJ entered an unfavorable decision on October 26, 2014. (R. 27). Mr. Shank timely appealed that decision and the District Court ordered a remand on January 16, 2018. (R. 556). The judge stated that "[u]pon remand, the ALJ is to reconsider the medical source opinions of record and minimally articulate his rationale for the weight he assigns to the opinions, offering specific reasons that are grounded in the record." (R. 555). Upon remand, the second ALJ found that Mr. Shank has several severe impairments including lumbar degenerative disc disease, obesity, and degenerative osteoarthritis of the left hip. (R. 451). Despite these impairments, the ALJ determined that Mr. Shank was capable of light work with some additional limitations. (R. 452). Based on the Vocational Expert's testimony, the ALJ found that Mr. Shank was unable to perform any past relevant work but could find other jobs in the economy including work as a toll collector, parking lot attendant, and cashier. (R. 461). Mr. Shank now argues that the RFC limitations are not based on substantial evidence in the record, which demonstrates his inability

1

to persist at ongoing work. [DE 15 at 2]. The Court agrees on that point and, therefore, remand is required.

## I.  FACTUAL BACKGROUND

Prior to the onset of his disability, Mr. Shank worked for twenty-two years at Culligan as a delivery, installation, and service man. (R. 36). He testified that he stopped working at Culligan due to his hip replacement and is unable to work currently because he is "not able to stay on all the time" since he must constantly alternate between sitting, standing, and walking. (R. 478). In August of 2007, Mr. Shank underwent an elective total hip replacement after experiencing pain and limited motion in his left hip. (R. 209; 218). Following his hip surgery, which he reported being very happy with, Mr. Shank started experiencing pain in his back and legs. [Ex. 11F; 12F; 13F]. In November of 2008, Dr. Zolman, a physiatrist specializing in rehabilitation, recommended that Mr. Shank start receiving selective epidural injections to help with his back pain. (R. 241). In March of 2009, Mr. Shank continued to report pain in his back with symptoms that were aggravated with increased activities but stated he was able to keep fairly active. (R. 249). After completing a discogram of Mr. Shank's back, Dr. Stensland concluded that Mr. Shank's primary pain generator was at the L5-S1 level. [Ex. 15]. In July of 2009, Dr. Shugart recommended that Mr. Shank receive spinal fusion in order to alleviate his pain. [Ex. 16F].[1] Mr. Shank continued to struggle with back pain for the next several years. In 2013, Mr. Shank reported that he continued to experience sharp and achy pain intermittently on both sides of his back and that "rest makes it better, while activity makes it worse." (R. 288).

---

[1] Mr. Shank decided to not follow through with the recommendation for spinal fusion. Mr. Shank states at different points that he would have less mobility following the spinal fusion procedure and thus opted to not have it done. (R. 482).

2

In April of 2013, Mr. Shank completed a consultative exam with Dr. Bacchus in which he continued to share the problems and pain he was experiencing in his back. (R. 400). In that exam, Mr. Shank reported being able to sit up to thirty minutes at a time, stand up to five minutes at a time, walk up to two hours, and carry up to ten pounds. *Id*. During the physical exam, Dr. Bacchus noted that his "gait and station [were] slightly antalgic on the left" and that he was unable to hop on his left foot. (R. 401). As a result of the exam, Dr. Bacchus concluded that Mr. Shank maintained the "physical fundamental capacity to perform 6-8 hours of light duties with non-continuous sitting, standing, or walking and limited lifting of no more than 10 lbs." *Id*.

At the second hearing before an ALJ, Mr. Shank testified to his daily activities and what he does from day to day. Mr. Shank spends a lot of his time taking care of his 89-year-old aunt including preparing her meals, doing laundry, cleaning dishes, taking her to her appointments, and cleaning the house. (R. 479-81). Mr. Shank testified that his other daily activities include woodworking in his shop, walking along the river on their small farm, looking after the garden, cultivating corn with a small tractor, and hoeing the corn. (R. 478-83). He also testified to needing to alternate between sitting, standing, and walking to help alleviate the pain. (R. 484-86). Mr. Shank also testified that on the days when he takes medication because his pain level is so high, he spends most of the day in the recliner and that he does this as much as two or three days per week. (R. 489). This was consistent with his testimony from the first hearing in which he testified that he has about two days per week where he really cannot do anything physical and he has up to 4-5 days per month where his back pain is at such a level that he is forced to rest all day. (R. 46-47). Finally, Mr. Shank testified that any job he worked in the future would have to involve a combination of sitting, standing, and walking. (R. 493).

After hearing testimony from Mr. Shank and the Vocational Expert, the ALJ made the following residual functional capacity finding:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work . . . [with a] sit/stand option while remaining on task and position changes would not take him off task more than 20 percent of the workday.

(R. 452). The ALJ ultimately found that Mr. Shank was not disabled. As the Social Security Administration noted in its brief, this Court has jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

## II.  STANDARD OF REVIEW

This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400.

---

[2] Section 405(g) provides for judicial review of any final decision after a hearing, which contains two elements: a jurisdictional requirement that claims be presented to the agency and a waivable requirement that the administrative remedies prescribed be exhausted. The Supreme Court has found that "§ 405(g) delegates to the SSA the authority to dictate which steps are generally required, see *Sims*, 530 U.S. at 106, 120 S.Ct. 2080, exhaustion of those steps may not only be waived by the agency, see *Weinberger v. Salfi*, 422 U.S. 749, 767, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), but also excused by the courts, see *Bowen v. City of New York*, 476 U.S. 467, 484, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986); *Eldridge*, 424 U.S. at 330, 96 S.Ct. 893." *Smith v. Berryhill*, 139 S. Ct. 1765, 1773–74 (2019).

In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III.  STANDARD FOR DISABILITY

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

5

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. § 404.1522(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. § 404.1520(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

## IV.  DISCUSSION

Mr. Shank argues that the ALJ's decision should be remanded for several reasons. First, he argues that the ALJ erred by relying on the VE's opinion concerning national numbers for available jobs, which involved an arbitrary and irrational method such that it cannot support the ALJ's step five finding. [DE 15 at 2]. He also claims that the ALJ failed to give substantial credibility to the plaintiff himself due to his strong work history and ethic. *Id*. Finally, he argues that the ALJ erred by failing to offer a complete credibility analysis when she improperly weighed the opinion of consulting examiner Dr. Bacchus and treating physician Dr. Williams and otherwise failed to account for impairments in combination, severe and non-severe, in the RFC. *Id*. Within this argument, Mr. Shank asserts that the RFC limitations are simply not based on substantial evidence in the record. The Court agrees with this last argument finding that the

ALJ's RFC assessment is not supported by substantial evidence as the ALJ did not adequately address Mr. Shank's inability to consistently attend work. While the ALJ acknowledged Mr. Shank's back problems and adopted some limitations in that respect, she failed to address other evidence in the record that could have supported further limitations or that could have supported a finding of disability.

In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, including testimony by the claimant, as well as evidence regarding limitations that are not severe. *Murphy v. Colvin,* 759 F.3d 811, 817 (7th Cir. 2014) (citation omitted). An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his findings. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001). The ALJ must then build "an accurate and logical bridge from the evidence to the conclusion" so that a court can assess the validity of the agency's decision and afford the claimant meaningful review. *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007). Notably, the RFC is based on the medical evidence in the record and all other relevant evidence, including the claimant's testimony. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

The ALJ in this case concluded that Mr. Shank had the RFC to perform light work with a sit/stand option and stated that these position changes would not take him off task more than 20 percent of the workday. (R. 452). While the ALJ included the sit/stand option because it "supports [Mr. Shank's] testimony that he needs to change positions while performing tasks," she failed to include any discussion of whether he could persist at ongoing work on a daily basis despite his testimony that his back pain requires him to sit in a recliner two or three days per week (R. 489) and that one of his treating physicians stated that he could only engage in daily

7

activities as tolerated (R. 294). Despite Mr. Shank's testimony regarding his need to take breaks up to two days per week, the ALJ failed to properly explain why she discounted this line of evidence, which could have supported more restrictive limitations or even a finding of disability.

As the record indicates, following Mr. Shank's hip replacement, he started experiencing back pain that varied in intensity but that became chronic over the years. The records from numerous physicians are consistent in that they demonstrate Mr. Shank's experience with persistent, chronic back pain that was only alleviated by alternating between sitting, standing, and walking. [Exhibits 11F; 13F; 14F; 15F; 20F]. The records also demonstrate that his pain did not improve over time. *Id*. In 2008, Mr. Shank went to see Dr. Zolman due to low back pain and Dr. Zolman noted that Mr. Shank's pain was "aching and stabbing" and that his symptoms were "aggravated with prolonged sitting and standing," but that he does "receive some relief when lying down." (R. 253). Notably, in 2013, Dr. Williams recorded that Mr. Shank was experiencing "sharp, throbbing and stabbing pain which he rates as a 2 to 8 on a scale from 1-10. The pain occurs intermittently. [He] states that activity and rest make[] it better, while sitting and standing makes it worse." (R. 296). Dr. Williams also noted that Mr. Shank's straight left leg raise was positive for radicular pain and recommended daily activity as tolerated. (R. 296-97).

When addressing these records in her opinion, the ALJ focused on negative straight raises, a normal gait, and his ability to move on/off a chair—each of which fail to address chronic pain Mr. Shank was experiencing in his back. (R. 455). There was no testimony or medical evidence indicating that simply because Mr. Shank often had a full range of motion that he could not suffer from further limitations—such as the need to alternate between sitting and standing with lying down on account of pain and/or the need to be limited in the total time spent sitting or standing/walking. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must

8

not succumb to the temptation to play doctor and make their own independent medical findings."). In crafting Mr. Shank's RFC, the ALJ found that additional restrictions were warranted on account of his need "to change positions while performing tasks." (R. 459). But the ALJ failed to explain why having a full range of motion or 5/5 strength is inconsistent with the diagnosis of degenerative disc disease or Mr. Shank's testimony of disabling pain. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). In her opinion, the ALJ noted:

> "[Mr. Shank] also stated that he has about two days a week where he cannot do anything physical. He reported that he then sits in his shop. He reported that there are four or five days a month where he does not really do anything. He specified that he feels pain in his lower back and legs on those days and that he sits in a soft chair with a pillow behind his back or on the couch."

(R. 454). Despite recognizing his testimony, the ALJ failed to observe that despite oftentimes having a full range of motion or 5/5 strength that Mr. Shank still suffered from chronic pain which required that he regularly take days off for rest and relief. Including a limitation in the RFC for alternating positions does not address his need to give his back relief more than one day per week. This fails to build a logical bridge between the evidence in the record and the ALJ's conclusion. *Terry*, 580 F.3d at 475. The record includes regular statements from both Mr. Shank and his physicians about how his back pain is aggravated with prolonged sitting or standing and that activity makes it worse, while resting makes it better. (R. 37-38, 253, 288, 296, 575-76).

And, while the ALJ found Mr. Shank's lumbar degenerative disc disease to be a severe impairment and found him capable of light work, she did not provide any functional limitations that accommodated his chronic pain symptoms other than the sit/stand option. Mr. Shank testified that while he can do certain activities like grocery shop, housework, garden, help his

9

aunt, drive his car, and do some woodworking, he is not always capable of performing those activities or, when he does, he is forced to take breaks. (R. 483-89). Here, the ALJ "failed to consider the difference between a person's being able to engage in sporadic physical activities and [his] being able to work eight hours a day five consecutive days of the week." *Id.* at 755. "This is insufficient because minimal daily activities, such as those in issue, do not establish that a person is capable of engaging in substantial physical activity." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Thompson v. Sullivan*, 987 F.3d 1482, 1490 (10th Cir. 1993)). And substantial physical activity for a full day or full week of work is precisely what Mr. Shank testified to being unable to do.

On step five in determining whether Mr. Shank could perform other work in the community, the ALJ posed a question to the VE regarding how much time an individual could be off task and still be able to keep any jobs in the economy, to which the VE responded that "typically if performance is off task 20 percent of the workday, week, month, year, ongoing, they're not gonna be able to maintain competitive employment." (R. 498). The VE went on to note that "employers in these types of jobs allow one day of sick leave per month" and stated that "[t]wo or more times per month ongoing are not going to be able to maintain competitive employment." (R. 499). Moreover, the VE testified that even with the sit/stand option, an employee would need to stay at the workstation to remain on task. (R. 505-06). This exchange between the VE and the ALJ is informative because it demonstrates that Mr. Shank's ability to work full-time five days a week for months at a time is a critical factor in determining whether there are any jobs in the economy that he can perform. The ALJ included an RFC that would allow Mr. Shank to be off-task up to 20% of the day due to his position change needs, but that amount of off-task time seems questionable in light of the VE's testimony and for the jobs the

10

VE recommended to the ALJ—cashier, toll collector, and parking lot attendant. (R. 461). Moreover, the sit/stand limitation does not provide Mr. Shank with the ability to walk around to provide relief to his back as he has testified to needing. Notably, the VE in the first hearing testified that being out of commission 4-5 days a month would prohibit Mr. Shank from holding down competitive employment and if he were to move away from his work station to relieve pain that would result in too much time off task. (R. 53). The VE in that hearing also testified that even with a sit/stand option and not needing to leave his workstation, a position change every 15 minutes would result in too much time off task and would prohibit Mr. Shank from being able to keep a job. (R. 54-55).

In sum, the ALJ's exclusion of this line of significant evidence supporting Mr. Shank's claim for disability fails to demonstrate that the ALJ considered the full extent of his back issues and its limiting effects. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). While the Court realizes that an ALJ need not discuss every piece of evidence in the record in rendering a decision, the ALJ cannot "cherry-pick" facts that support a finding of non-disability while ignoring evidence that points to a disability finding. *See id.* Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Because the ALJ's assessment of Mr. Shank's RFC is not supported by substantial evidence or an adequate discussion of the actual evidence related to his need for rest and relief from his back pain, the determination cannot stand. 42 U.S.C. § 405(g); SSR 96–8p.

## V.  CONCLUSION

The Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: September 29, 2020

                                              /s/ JON E. DEGUILIO
                                        Chief Judge
                                        United States District Court